**Steven B. WIRTH, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–79C.**

United States Court of Federal Claims.

Sept. 5, 1996.

of credit for work done and authorized for payment under the 21–month schedule.

Steven B. Wirth, Mossyrock, Washington, pro se.

S. Lane Tucker, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

## I. INTRODUCTION

Mr. Steven B. Wirth (Mr. Wirth/plaintiff), an electrical equipment specialist with the United States Department of the Army (government/defendant), seeks reimbursement for moving expenses he incurred in relocating his household goods from Spanaway, Washington, to Fort Campbell, Kentucky, pursuant to orders issued by defendant. Mr. Wirth contends that, as a matter of law, he is entitled to reimbursement of costs calculated under the "commuted rate system" described in the Department of Defense Joint Travel Regulations (JTR), and authorized in his transfer orders. Conversely, defendant argues that, as a matter of law and as the Comptroller General of the United States and General Accounting Office (GAO) held in separate administrative proceedings, Mr. Wirth may be reimbursed for his moving expenses only pursuant to the "actual expense method," described in the JTR, rather than the commuted rate system. Accordingly, defendant filed a motion for summary judgment on December 14, 1995, and plaintiff filed a cross-motion for summary judgment on February 12, 1996. Both parties argue that no genuine dispute of material fact prevents this case from proceeding on summary disposition, and this court concurs. Upon a careful review of the parties' submissions, we deny defendant's motion for summary judgment and grant plaintiff's cross-motion for summary judgment.

## II. FACTS [1]

Defendant issued Mr. Wirth permanent change of duty station orders on December 6, 1991, instructing him to relocate from the State of Washington to the Logistics Assistance Division in Fort Monmouth, New Jersey.[2] Shortly thereafter, defendant changed plaintiff's new designated duty station from New Jersey to Fort Campbell, Kentucky, by amendment on January 10, 1992. Defendant's policy regarding relocation of household goods (HHG) provides, in short, that for

---

1. Defendant filed its proposed findings of uncontroverted fact on December 14, 1995, and plaintiff filed his on February 12, 1996, as required by RCFC 56(d)(1). The court makes the prospective findings of facts derived from the parties' submissions. Pursuant to the rules of this court, in reviewing a motion for summary judgment, as presented here, "the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are included in the Statement of Genuine Issues and are controverted by affidavit or other written or oral evidence." RCFC 56(d)(3); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

2. See Plaintiff's Complaint filed February 2, 1995 (Compl.) at Exhibit (Exh.) 1. The government-issued form is entitled Request and Authorization for DOD Civilian Permanent Duty Travel, Travel Authorized Herein as Necessary in the Public Service (orders).

purposes of relocating an employee's HHG, the government agency will use either the commuted rate or actual expense method of shipment based on a determination of which is more economical to the government. 2 JTR ¶ C8001–4c(3) (October 1, 1990).

Mr. Wirth's transfer orders authorized him to ship his HHG to Kentucky according to the "commuted rate system" as described in the JTR. Briefly, the JTR explains that "[u]nder the commuted rate system, an employee makes his own arrangements for transporting household goods ... [and is] reimbursed by the Government in accordance with schedules of commuted rates which are compiled and distributed by the General Services Administration (GSA)...." 2 JTR ¶ C8001–4(b)(1). Plaintiff's orders were signed by three government officials on behalf of defendant, *i.e.*, the Requesting Official, the Approving Official, and the Order Authorizing Official.

Complying fully with the terms of his orders, Mr. Wirth moved his HHG and family to Kentucky. Subsequently, on February 17, 1992, plaintiff submitted his permanent change of station settlement voucher to defendant's Finance and Accounting Office, Fort Campbell, Kentucky, claiming relocation expenses based on the commuted rate. The Finance and Accounting Officer at Fort Campbell, Lieutenant Colonel (LTC) Hugh B. Tant, III, denied plaintiff's request for reimbursement on May 13, 1992. LTC Tant contended that plaintiff was entitled only to those expenses determined under the "actual expense method," or Government Bill of Lading (GBL) cost, as described under 2 JTR ¶ C8001–4b(2), and *not* under the commuted rate system.[3] Defendant's regulations state:

Under the actual expense method, the Government assumes responsibility for awarding contracts and for other negotiations with carriers as the property is shipped on a Government bill of lading, the Government audits and pays transportation vouchers directly to carriers.

2 JTR ¶ C8001–4b(2) (October 1, 1990).

Concurring with LTC Tant's decision, the Comptroller General of the United States, GAO, determined on May 6, 1993, that plaintiff was not entitled to reimbursement for his relocation expenses calculated at the commuted rate. Specifically, the Comptroller General held:

As a general rule, legal rights and liabilities with regard to travel expenses vest under the statute and regulations when the travel is performed. As a result, travel orders may not be revoked or modified retroactively so as to increase or decrease the rights which have become fixed at the time the travel has been performed, except where there are errors apparent on the face of the original orders or where all the facts and circumstances surrounding the issuance of the original orders clearly demonstrate that some provision which was previously determined and definitely intended has been omitted through error or inadvertence in their preparation.

\* \* \* \* \* \*

Since the required cost comparison was not made before Mr. Wirth's shipment took place, the Department of the Army violated the mandatory policy stated in 2 JTR § [*sic*] C8001–4c(3), and the travel order provision for commuted rate reimbursement comes within the exception to the general rule against retroactive modification of travel orders.

---

3. Explaining his decision, LTC Tant stated the following:

> Mr. Wirth was denied reimbursement for this move at the commuted rate based on my interpretation of the Joint Travel Regulation (JTR), Volume II, paragraph C8001, 4C(3) (enclosure 3). This paragraph requires a cost comparison between the Government Bill of Lading (GBL) cost and the commuted rate cost of shipping household goods *prior* to shipment of household goods. This paragraph further provides that after comparing these costs the more economical method be used if the cost under one

> method exceeds the estimated cost under the other method by more than $100.00. In this instance the GBL cost is estimated to be $9,217.44 while the commuted rate cost is estimated to be $16,676.74.... Based on the JTR, the aforementioned Comptroller General Decision [B–209873 (1983)], and Mr. Wirth's failure to produce receipts or satisfactory evidence of his actual expenses, I denied reimbursement for his movement of household goods.

Deft's Motion for Summary Judgment at Index p. 3–4 (emphasis added).

Compl. at Exh. 3, pp. 2–4, *Steven B. Wirth,* B–249337 (May 6, 1993) (citations omitted).

Seeking an alternative avenue of relief, Mr. Wirth filed his complaint in this court on February 2, 1995, requesting reimbursement of his shipping expenses calculated under the commuted rate system in the amount of $16,676.74, plus interest, costs, and attorney fees.

## III. DISCUSSION

The issue presented by this case requires the court to examine 5 U.S.C. § 5724, and defendant's regulations promulgated thereunder, specifically 2 JTR ¶ C8001–4c(3), and, in the context of such law, determine— whether defendant properly denied plaintiff reimbursement of his shipping expenses calculated under the commuted rate system. More specifically, the issue presented to the court is:

> Whether ¶ C8001–4c(3), Volume II, of defendant's Joint Travel Regulations (JTR), reasonably interprets 5 U.S.C. § 5724, and establishes a mandatory policy requiring defendant to perform a cost comparison between the "actual expense method" and the "commuted rate system" *before* authorizing an employee's shipment of HHG according to one of the two methods. And if so, may the government retroactively modify plaintiff's travel orders requiring plaintiff to ship HHG pursuant to the actual expense method, based on the results of a cost comparison performed *after* plaintiff has been already authorized to ship, and, in fact, has completed shipment, under the "commuted rate" system, thereby permitting plaintiff reimbursement of only those relocation expenses supported by receipt or other evidence of expenditure as required by the "actual expense" method described under ¶ C8001–4b.

Both parties are seeking summary disposition of their dispute.[4] The rules governing proceedings in this court permit a judge to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 250, 106 S.Ct. 2505, 2509–10, 2511, 91 L.Ed.2d 202 (1986). In so doing, this court views the evidence in a light favoring the nonmovant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Here, the parties have filed in this court the appropriate documents supporting their respective motions for summary judgment. *See* RCFC 56(d). Upon a careful consideration of the parties' contentions and the governing law, this court determines that there are no material facts in genuine dispute, and the parties' contentions focus largely on statutory and regulatory interpretation. As a result, we hold that defendant reasonably interprets 5 U.S.C. § 5724 through promulgation of its joint travel regulations, specifically 2 JTR ¶ C8001–4c(3). Notwithstanding this fact, we further hold that, in light of the legislative purpose supporting the enactment of 5 U.S.C. § 5724(c), defendant has misapplied its policy embodied in 2 JTR ¶ C8001–4c(3), to the undisputed facts of this case and plaintiff has been substantially prejudiced as a result. Accordingly, this court denies defendant's motion for summary judgment and grants plaintiff's cross-motion for summary judgment.

In this case, both parties refer the court to § 5724(a)(2), Title 5, of the United States Code, as the pertinent federal statute granting plaintiff's general right to reimbursement for his relocation expenses.[5] General-

---

4. Briefly, plaintiff seeks summary judgment on two specific issues: (i) whether plaintiff is entitled to reimbursement for certain relocation costs based on the commuted rate system, and (ii) if not, whether the agency performed an incomplete cost comparison described under 2 JTR ¶ C8001–4c(3). On the other hand, defendant seeks summary judgment only on the former issue. Therefore, granting defendant's motion does not dispose of the entire case and this

court must review defendant's motion as one for partial summary judgment under RCFC 56(e).

5. This section provides:

> (a) Under such regulations as the President may prescribe and when the head of the agency concerned or his designee authorizes or

ly speaking, this statute provides that the government agency "shall pay" certain designated expenses incurred by a government employee relocating at the government's request. 5 U.S.C. § 5724(a)(2) (1994).[6] Most relevant here, the express terms of subparagraph (c) of § 5724 grant defendant the right to implement regulations to limit its costs of travel and relocation expenses as follows:

Under such regulations as the President may prescribe, *an employee who transfers between points inside the continental United States, instead of being paid for the actual expenses* of transporting, packing, crating, temporarily storing, draying, and unpacking of household goods and personal effects *shall be reimbursed on a commuted basis* at the rates per 100 pounds that are fixed by zones in the regulations. The reimbursement may not exceed the amount which would be allowable for the unauthorized weight allowance. *However, under regulations prescribed by the President, payment of actual expenses may be made when the head of the agency determines that payment of actual expenses is more economical to the Government.*

5 U.S.C. § 5724(c) (1994) (emphasis added).

Under the authority of 5 U.S.C. § 5724, defendant implemented the Joint Travel Regulations, which govern the relocation of civilian employees of the U.S. Department of Defense, such as Mr. Wirth. Paragraph C8001–4c(3), Volume II, of defendant's JTR, as amended on October 1, 1990, establishes the following policy:

*(3) *Policy.* A cost comparison will be made between the actual expense (GBL) and commuted rate methods of shipping household goods. In the event the estimated cost under one method exceeds the estimated cost under the other method by more than $100, *the more economical method will be used.* An employee's request for a particular method will be the determining factor in cases where the costs are within $100 of each other.

2 JTR ¶ C8001–4c(3) (October 1, 1990) (emphasis added). In short, the express terms of defendant's regulation provide that the government agency "will" utilize either the commuted rate or actual expense method for a particular employee's shipment of HHG, based on the results of an estimated cost comparison between the two available methods of shipment.

In light of the foregoing federal statute, 5 U.S.C. § 5724, and defendant's JTR, defendant acknowledges that plaintiff is entitled to reimbursement for his moving expenses pursuant to 5 U.S.C. § 5724, but only as calculated by the actual expense method, and *not* the commuted rate system, as described under 2 JTR ¶ C8001–4b. Although the government acknowledges that plaintiff's orders, on their face, authorized him to move his HHG according to the "commuted rate" system, defendant nonetheless argues that these orders were contrary to law, since they were issued by government agents who failed to *first* perform the mandatory cost comparison required by 2 JTR ¶ C8001–4c(3). Hence, the government avers that the orders were issued without authority and, thus, are voidable. Furthermore, defendant argues that having performed the mandatory cost comparison *after* Mr. Wirth moved his HHG, and having found the actual cost method estimate to be substantially less expensive than the commuted rate estimate, the government justifiably made a retroactive modification of Mr. Wirth's travel orders, authorizing only the actual cost method of HHG shipment. Accordingly, defendant contends that plaintiff is entitled to reimbursement for only those relocation costs plaintiff actually incurred and can substantiate with receipts.

---

approves, the agency shall pay from Government funds—

\* \* \* \* \* \*

(2) the expenses of transporting, packing, crating, temporarily storing, draying, and unpacking his household goods and personal effects not in excess of 18,000 pounds net weight; ....

5 U.S.C. § 5724(a)(2) (1994).

**6.** Thus, 5 U.S.C. § 5724 explicitly establishes plaintiff's legal entitlement to money for his relocation of HHG and, accordingly, this court has jurisdiction over plaintiff's claim pursuant to the Tucker Act, 28 U.S.C. § 1491 (1994). The parties do not dispute this point.

In contrast, plaintiff asserts that the Comptroller General incorrectly interpreted 2 JTR ¶ C8001-4c(3), alleging that the regulation instructs agency officials to perform a cost comparison only prior to authorizing a "shipment" of HHG, *not* prior to "reimbursing" the shipping costs pursuant to the commuted rate system. Instead, plaintiff points to 2 JTR ¶¶ C8001-6 and C8009 as the relevant regulations addressing reimbursement of relocation expenses.

Furthermore, plaintiff contends that defendant is bound by an implied-in-fact contract to reimburse him under the commuted rate system and, therefore, may not legally modify plaintiff's travel orders retroactively so as to limit his relocation expenses. Plaintiff alleges an implied-in-fact contract based on— (i) defendant's Joint Travel Regulations, Volume II, ¶ C8001-4, and ¶¶ C4001 & C4102; (ii) plaintiff's Permanent Change of Station (PCS) orders; (iii) plaintiff's Mandatory Mobility, or Transportation, agreement; and (iv) plaintiff's official job description. Plaintiff avers that defendant's retroactive change in his travel orders after he relied on the orders and moved his HHG under the terms of the commuted rate system constitutes a breach of the alleged implied-in-fact contract.

Finally, plaintiff argues that having authorized his move pursuant to the commuted rate system, the government is now estopped from retroactively modifying his travel orders so as to limit plaintiff's reimbursement for relocation expenses after plaintiff reasonably relied on defendant's orders, albeit to his detriment, and performed the move. For example, in the process of relocating his HHG to Kentucky under the commuted rate system as stipulated in his travel orders, plaintiff did not maintain, nor was he required to maintain, receipts substantiating his relocation costs. Although receipts are *not* required for reimbursement under the commuted rate system, receipts are required under the actual cost method. Therefore, plaintiff asserts, defendant's after-the-fact order permitting cost reimbursement only under the actual cost method denies plaintiff— (i) all moving expenses for which plaintiff did not maintain, and was not required to maintain, receipts for substantiation, and (ii) certain expenses contemplated under the commuted rate system, which, by their nature, cannot be supported by receipts, such as plaintiff's time, energy, and the use of his personal vehicle. In essence, therefore, plaintiff argues that the government is estopped from changing its mind and retroactively changing plaintiff's travel orders, because plaintiff has already performed the irreversible functions as requested by the government and would suffer substantial monetary harm as a result. Accordingly, plaintiff asks this court to award him transportation costs in the amount of $16,676.74 plus interest, costs, and attorney fees.

In sum, defendant admittedly failed to comply with the policy stated in 2 JTR ¶ C8001-4c(3). That is to say, defendant failed to perform the required subject cost comparison *before* authorizing plaintiff's transport of his HHG under the commuted rate system as the regulations instruct. Nevertheless, defendant argues that the government properly performed the cost comparison *after* plaintiff shipped and relocated his HHG. Plaintiff seeks to estop the government from retroactively modifying his travel orders based on defendant's belated cost comparison. Before reaching plaintiff's estoppel claim, however, this court first reviews the statute governing cost reimbursement for the relocation of government civilian employees and the statute's legislative history, to determine—whether Congress expressed an intent that the agency lose its power to designate the authorized means of shipping an employee's HHG after the employee has previously been authorized and in fact shipped the HHG as requested. This approach follows the Federal Circuit's guidelines established for this court's review of agency action or inaction that fails to comply with the agency's own regulations.

For example, in *Oy v. United States,* the Federal Circuit acknowledged that, generally speaking, "an agency is required to comply with its own regulations." 61 F.3d 866, 871 (Fed.Cir.1995). In this connection, the plaintiff contended that the Department of Commerce's failure to issue a notice to interested parties as required by the agency's regulations within a specific time period prevented

the agency from *subsequently* issuing the notice, after the regulatory time period lapsed. *Id.* Although the Department of Commerce conceded that it did not satisfy the timing requirement as specified in its regulations, the agency argued that it retained the authority to issue the regulatory notice, albeit belatedly. *Id.* The Federal Circuit agreed that "not every failure of an agency to observe timing requirements voids subsequent agency action, especially when important public rights are at stake." *Id.* (citing *Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986)). Nevertheless, the court held that it must review the express terms of the statute and the statute's legislative history to determine—(i) whether Congress intended that the agency loses its power to act after expiration of the statutory time frame, and (ii) whether Congress expressed consequences for the agency's noncompliance with the timing requirement. *Id.* at 872. If the response to both of the foregoing issues is negative, then " 'the federal courts will not in the ordinary course impose their own coercive sanctions,' " *Id.* (quoting *United States v. James Daniel Good Real Property,* 510 U.S. 43, 63, 114 S.Ct. 492, 506, 126 L.Ed.2d 490 (1993)), but rather, will review the agency's deviation from the terms of its own regulations under a harmless error analysis.

In *Oy,* the timing requirement was contained *not* in the statute, but in the agency's regulations. *Id.* at 873. Thus, the court examined the statute's language and its legislative history to determine whether the agency's construction of its regulations was permissible. *Id.* The court concluded, in part, that Congress' use of the permissive word "may" in the statute granted the agency broad discretion in administering the statute. Moreover, upon reviewing the statute's legislative history, the court concluded that Congress viewed the notice requirement as necessary to the substantive purpose of the statute, which was to "protect domestic industry." *Id.* at 873–74. Turning to the Department of Commerce's implementing regulations, the court held that the notification requirement was a significant factor in the regulatory framework and a primary factor furthering the purpose of the subject statute.

*Id.* at 875. As a result, the court upheld the agency's regulations as a reasonable interpretation of the subject statute, stating, "The timing requirements of [the regulation] are merely procedural aids.... They are subordinate to the overriding requirement of notice. A contrary interpretation would defeat the clear intent of Congress." *Id.* Consequently, since the regulatory timing requirement disputed by plaintiff constituted a regulatory procedure and, thus, was properly subject to a harmless error analysis, the plaintiff was required to show prejudice resulting from the agency's noncompliance to succeed on its claim. *Id.*

■ In sum, then, if the plaintiff does not suffer substantial harm or prejudice as a result of the agency's failure to timely comply with its own regulatory procedures, then the agency's failure is deemed harmless error. *Oy,* 61 F.3d at 875–76; *Belton Indus., Inc. v. United States,* 6 F.3d 756, 761 (Fed. Cir.1993) (citing *Cornelius v. Nutt,* 472 U.S. 648, 663, 105 S.Ct. 2882, 2891, 86 L.Ed.2d 515 (1985)), *cert. denied,* 510 U.S. 1093, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994). This rule of harmless error is founded on "the 'great principle of public policy, applicable to all governments alike, ... forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.' " *Oy,* 61 F.3d at 871 (quoting *Brock v. Pierce County,* 476 U.S. at 260, 106 S.Ct. at 1839). Finding that plaintiff failed to carry this burden of proof in *Oy,* however, the court denied plaintiff's claim. *Id.* at 875–76.

Similarly, the Federal Circuit more recently discussed the proper course a court should take in reviewing an agency's failure to comply with its own procedural rules. *Intercargo Ins. Co. v. United States,* 83 F.3d 391 (Fed.Cir.1996). In *Intercargo,* an importer's surety complained that the Customs Service illegally diverged from federal statutory requirements in failing to adequately specify the reasons for extending the one-year time period in which the Service was permitted to determine and assess duties on the importer's entries, *i.e.,* "liquidate the entries." *Id.* at 392. Specifically, the express terms of 19 U.S.C. § 1504 permit the Service to unilater-

ally extend the one-year liquidation time period by another year "by giving notice of such extension to the importer in the form and manner prescribed by regulation." *Id.* at 392 (quoting 19 U.S.C. § 1504(b) (1988)). Plaintiff alleged and the lower court found, however, that, contrary to the Service's relevant regulations, the Service's notice to the importer did not specify "one of the three statutory reasons for obtaining additional time for the liquidations" and, therefore, the notice was "not effective to extend the statutory liquidation period." *Id.* at 393.

Upon review of the lower court's decision, the Federal Circuit agreed that the notice did not comply with the regulation as interpreted by the court's earlier decision in *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763 (Fed.Cir.1993). Thus, finding the Service's notice to plaintiff defective, the court reviewed the question of what consequences result from the defect. The Federal Circuit instructed that judicial review of agency proceedings should follow the guidance provided in § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, which provides that "due account shall be taken of the rule of prejudicial error." *Id.* at 394. Accordingly, the Federal Circuit admonished that the court should employ "conventional principles of harmless error when reviewing agency action." *Id.*

 As explained by the Federal Circuit in *Intercargo*, "not all deviations from the requirements of the statute or regulation would affect the interest that the statute and regulation are designed to protect, and ... immaterial errors on the part of public servants" should not prejudice public rights. 83 F.3d at 395; *see also Brock v. Pierce County*, *supra*, and *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). Or, conversely put, some deviations by an agency from the statutory or regulatory requirements are not permitted, because such actions cause substantial prejudice to statutorily-protected interests. Indeed, the U.S. Supreme Court recognizes that—

"[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party."

*American Farm Lines v. Black Ball Freight Svc.*, 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970) (quoting *NLRB v. Monsanto Chemical Co.*, 205 F.2d 763, 764 (8th Cir.1953)) (additional citations omitted). Therefore, upon determining that an agency's particular failure to comply with its own rules is subject to a harmless error analysis, judicial review must determine whether the agency's violation prejudiced the complainant. *Intercargo*, 83 F.3d at 395. "Prejudice, as used in this setting, means injury to an interest that the statute, regulation, or rule in question was designed to protect." *Id.* at 396.

 Turning to apply the foregoing principles enunciated by the Federal Circuit in *Oy* and *Intercargo* to the undisputed facts presented here, this court first refers to the relevant federal statute and its legislative history to determine what specific interests the statute was designed to protect. Given the task of interpreting a federal statute, this court recognizes its duty to promote the will of the legislature by fully respecting Congress' intent underlying the statutory provision at issue. Indeed, this court is bound to give effect to "the clear meaning of a statute, *as revealed by its language, purpose, and history*." *Al Tech Specialty Steel Corp. v. United States*, 745 F.2d 632, 642 (Fed.Cir. 1984) (quoting *Southern [sic] Comm'y College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979)) (emphasis added); *see also Farrel Corp. v. United States Int'l Trade Comm.*, 949 F.2d 1147, 1152 (Fed.Cir.1991), *cert. denied*, 504 U.S. 913, 112 S.Ct. 1947, 118 L.Ed.2d 551 (1992). In doing so, this court must evaluate the plain language of the statute. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1579 (Fed.Cir.1990) (citing *Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 300–01, 109 S.Ct. 1814, 1817–18, 104 L.Ed.2d 318 (1989)), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113

L.Ed.2d 248 (1991). "If the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 685, 88 L.Ed.2d 691 (1986) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)).

Here, the plain terms of § 5724(c) describe the method by which a government agency "shall pay from Government funds ... the expenses" of an employee's relocation, and provides that where actual expenses are not paid, "an employee who transfers between points inside the continental United States ... *shall be* reimbursed on a commuted basis." § 5724(c) (emphasis added). The explicit terms further provide, however, that an agency may make "payment of actual expenses ... when the head of the agency determines that payment of actual expenses is more economical to the Government." *Id.* Thus, in describing the form of payment to be made to compensate an employee for the shipping and relocating of the employee's HHG, the clear terms of § 5724(c) do not express a specific time frame during which the agency may determine which form of shipping method, the actual expense or commuted rate system, is "more economical to the Government" for a particular employee's transfer. In fact, the statutory language does not even speak to the agency's duty *per se* to perform a cost comparison between the two methods of shipping HHG. Therefore, on this analysis, the statute, 5 U.S.C. § 5724(c), is ambiguous with respect to the issue presented.

As in *Oy*, therefore, the statute at issue here does not address the agency's duty to perform a specific function within a definitive time frame. Instead, notwithstanding the statute's silence on the issue at hand, defendant avers that its Joint Travel Regulations mandate that government agency officials perform a cost comparison between the actual expense method and the commuted rate system of shipping HHG *before* authorizing a government employee's shipment. 2 JTR

¶ C8001–4c(3) (October 1, 1990) ("A cost comparison will be made between the actual expense (GBL) and commuted rate methods of shipping household goods. In the event the estimated cost under one method exceeds the estimated cost under the other method by more than $100, the more economical method will be used."). The government agency here, as in *Oy*, contends that having failed to comply with its own regulations (before issuing plaintiff's orders), defendant, nonetheless, asserts that it retains the authority to comply with its regulations, *i.e.*, perform a cost comparison *after* issuing plaintiff's travel orders and *after* plaintiff has already performed as ordered.

■ Again as in *Oy*, therefore, since the express language of the statute does not speak to the issue at hand, this court must review the legislative history underlying the statute, 5 U.S.C. § 5724(c). Here, the court's review seeks to determine—(i) whether Congress intended that the agency lose its power to determine the economic advantage of the two available methods of HHG shipment *after* issuing an employee's travel orders and *after* the employee has completed the HHG shipment, and (ii) whether Congress expressed specific consequences resulting from the agency's failure to perform a review of the economic advantages of the two methods prior to authorizing an employee's HHG shipment. In short, this court reviews the statute's legislative history to determine whether defendant's interpretation of the statute, as reflected in its regulations and argued before this court, is reasonable and consonant with Congress' intent. *Texas State Comm'n for the Blind v. United States*, 796 F.2d 400, 406 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 828 (1987); *see also Farrel Corp.*, 949 F.2d at 1152. If both of the answers to the foregoing questions are in the negative, then the court will proceed to perform a harmless error analysis. *See Oy*, 61 F.3d at 875–76; *Intercargo*, 83 F.3d at 394.

■ Upon applying the foregoing standard in this case, this court holds that a harmless error analysis is not necessary, because the legislative history shows that Congress anticipated that the agency's economic review of

the cost advantages between the two methods available for shipping an employee's HHG would be performed *prior* to authorizing an employee's shipment and prior to the employee's actual shipment, not after. Accordingly, under the specific undisputed facts and circumstances presented here, the agency does not retain the authority to change the method of HHG shipment specified on an employee's travel orders based on a cost comparison performed *after* the agency has issued an employee's travel orders that are normal and complete on their face, and *after* the employee has fully complied with such orders. This court further holds that, even if Congress did not intend that the agency lose its power to perform an economic review of the two shipping methods after the agency issued the travel orders and the employee completed the HHG shipment, pursuant to a harmless error analysis, the government may not retroactively modify plaintiff's travel orders in this case, due to the consequential and substantial prejudice plaintiff suffers as a result. Proceeding with the analysis directed by the Federal Circuit in *Oy* and *Intercargo*, we review defendant's assertion that its regulations permissibly interpret the Administrative Expenses Act by allowing the agency to perform a cost comparison of the two methods of HHG shipment *after* already issuing plaintiff travel orders, regular in all respects on their face, and *after* plaintiff fully completed his HHG shipment.

■ Although this court generally reviews an agency's statutory interpretation *de novo*, the U.S. Supreme Court instructs the court to extend due deference to an agency's "contemporaneous interpretation of the statute it is entrusted to administer." *Commodity Futures Trading Comm. v. Schor*, 478 U.S. 833, 844, 106 S.Ct. 3245, 3253, 92 L.Ed.2d 675 (1986) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 844–45, 104 S.Ct. at 2782–83) (additional citations omitted); *Farrel Corp.*, 949 F.2d at 1151. "Such deference is limited, however, by 'our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.'" *Farrel Corp.*, 949 F.2d at 1152 (quoting *A1 Tech Specialty Steel Corp.*, 745 F.2d at 642; *and Southern [sic] Comm'y College v. Davis*, 442 U.S. at

411, 99 S.Ct. at 2369). Indeed, the Supreme Court admonishes that:

> [T]he courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate *or that frustrate the policy that Congress sought to implement.*

*FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) (citations omitted and emphasis added); *see also id.* at 41, 102 S.Ct. at 46.

In reviewing the policy that Congress intended in its enactment of 5 U.S.C. § 5724(c), the court notes that the origins of the statute are twofold. Congress originally enacted the first two sentences of § 5724(c) as 5 U.S.C. § 73b–1 of the Administrative Expenses Act of 1946, Pub.L. 79–600, § 1(b), 60 Stat. 806. In 1966, Congress amended the third sentence to the Act, providing, as codified, "However, under regulations prescribed by the President, payment of actual expenses may be made when the head of the agency determines that payment of actual expenses is more economical to the government." 5 U.S.C. § 5724(c) (1994); *see* Pub.L. 89–516, § 1b, 80 Stat. 323 (July 21, 1966). Although it is this latter sentence that is in issue here, a general review of Congress' intent in implementing the Administrative Expenses Act of 1946 is a serviceable foreground for a review of its later amendment.

As the predecessor to 5 U.S.C. § 5724(c), § 73b–1 of the Administrative Expenses Act of 1946, served to "authorize certain administrative expenses in the Government service and for other purposes," which Congress had previously statutorily appropriated on an annual basis. 60 Stat. 806; H.R.Rep. No. 2186, 79th Cong., 2d Sess. 2 (1946) (hereinafter H.R.Rep. No. 2186). That is to say, through enactment of § 73b–1, Congress made a "permanent provision for the expenses payable by the Government in the event of a transfer of a civilian employee from one official headquarters to another and displace[d] for that purpose the present temporary pro-

visions which are carried in the annual appropriation act." H.R.Rep. No. 2186 at 2. The Act retained the proviso contained in the appropriation acts that the agency department head, assistant head, or other delegee personally authorize the employee's transfer and expenses through an order "issued in advance of travel." *Id.* at 2–3.

Among other things, § (a) of the Act of 1946 permitted the agency to authorize "in the order directing the travel," and pay from government funds, the actual expenses of shipping the household goods of "any civilian officer or employee of the Government" pursuant to "regulations as the President may prescribe." 60 Stat. 806. Alternatively, § (b) provided that "[i]n lieu of the payment of actual expenses of [transporting, etc.] ... household goods and personal effects, ... reimbursement shall be made to the officer or employee on a commuted basis...." 60 Stat. 807.

Congress implemented the commuted rate system as an alternative means of shipping an employee's HHG in the Act of 1946 to minimize the administrative burden assumed by the government in relocating an employee under the actual expense method. H.R.Rep. No. 2186 at 3. Under the original method of shipping HHG, *i.e.*, the actual expense method, the agency is responsible for arranging the employee's means of shipment by rail freight, vessel, motor van, or a combination of means. 60 Stat. 806, 807; H.R.Rep. No. 2186 at 3. As Congress recognized, however, this actual expense method of shipment imposed a substantial burden on the government agencies. H.R.Rep. No. 2186 at 3. Congress explained:

> *The operations involved for administration alone* in estimating the goods to be shipped, obtaining bids from motor-van carriers (who legally may, and often do, grant a discount to the Government), checking the tariff costs for shipment by rail or motor freight, obtaining estimates for packing, crating, and drayage for rail shipment, evaluating the bids and issuing the Government bill of lading, supervising the shipment and delivery at destination, examining the carrier's invoice, vouchering payment thereon, auditing the payment

and collecting back from the employee in case of excess weight, and settling of claims of the employees and the carriers, *are believed to represent an undue effort and expense which can be eliminated entirely by a provision for commutation of the expense of shipment to a lump sum* ["derived from a table to be prescribed by Executive regulation"].

*Id.* (emphasis added). Thus, Congress viewed the actual expense method as often imposing an "undue effort and expense" on government agencies. *Id.* Moreover, Congress reported that under the actual expense method, the employee is often dissatisfied entrusting the HHG with the particular means of shipment the government chooses for the employee's relocation. *Id.* Thus, both the agencies and the employees were viewed as desiring greater procedural flexibility in their relocations of HHG.

Congress enacted the Administrative Expense Act of 1946 to address these problems and to allow the administrative burden imposed on the agencies by the actual expense method to occasionally shift to the employee under the commuted rate system. Thus, the Act provided an alternative to the government's payment of the actual expense of relocating an employee—the commuted rate system. "Under the commuted rate system, the employee selects the household goods carrier and has his goods moved. He is then reimbursed by the government under a scale of reimbursement which is based upon commercial tariffs, applicable to the general public and approved by the Interstate Commerce Commission." S.Rep. No. 1357, 89th Cong., 2d Sess. 2 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2564, 2565 (report on proposed 1966 amendment). In short, the schedule is "based upon the average cost ordinarily incurred for a given amount of goods for a given distance." H.R.Rep. No. 2186 at 3. Finally, in creating the Act of 1946, Congress intended that "[t]he employee will select whatever means of shipment best suits *his* purposes and the Government will pay the same sum, whatever method the employee may select." H.R.Rep. No. 2186 at 4.

Two decades later, however, Congress amended the Administrative Expenses Act in

1966, with the following language: "except that payment of actual expenses may be made whenever, under regulations prescribed by the President, the head of the agency determines that such method of payment is more economical to the Government." Pub.L. 89–516, § 1(b), 80 Stat. 323. Congress explained that this—

> provision would permit the Government to exercise judgment in deciding whether an employee's household goods *shall be shipped by the Government* on Government bills of lading *or shall be shipped by the employee* under the commuted rates system applicable under the current law to transfers within the contiguous 48 States.... [The commuted rate] method has proven satisfactory generally but in some instances the use of the Government bill of lading method would be less costly to the Government. The bill would *permit* the Government to use the more economical method depending upon the circumstances.

S.Rep. No. 1357, 89th Cong., 2d Sess. 2 (1966) U.S.Code Cong. & Admin.News 1966 pp. 2564, 2566 (emphasis added) (hereinafter referred to as S.Rep. No. 1357). Thus, Congress believed that "in some instances the use of the Government bill of lading method would be less costly to the Government. The bill would permit the Government to use the more economical method depending on the circumstances." *Id.* Therefore, in short, in amending the Administrative Expenses Act in 1966, Congress intended to inject greater flexibility in the statute to "permit" the government agency an option of using either the actual expense method or the commuted rate system, and thereby improve administrative and cost efficiency in relocating the HHG of government employees. Specifically, Congress explained:

> This subsection adds wording *to permit* greater use of Government bills of lading in domestic shipments of household goods. Subsection (b) of the Administrative Expenses Act presently authorizes, under regulations of the President, the use of the commuted rates system for transportation of employees' household goods between posts of duty.... Ordinarily, it is believed that this system should be retained for use but occasionally transportation costs to the Government can be substantially reduced through the use of Government bills of lading. *Some flexibility is needed so that the Government bill of lading system may be used when these savings can be accomplished. By the insertion, flexibility would be provided so that either system could be used depending on which would be more economical to the Government.*

H.R.Rep. No. 1199, 89th Cong., 1st Sess. 5 (1965) (emphasis added) (hereinafter referred to as H.R.Rep. No. 1199).

Therefore, the legislative history supporting the amendment of the Act in 1966 clearly indicates that Congress intended the agencies to have greater flexibility in determining, *prospectively,* which method of shipment to use in relocating an employee's HHG. Notwithstanding Congress' intent to allow the agencies greater flexibility in determining which method of shipment to use, it is significant that nowhere in the express terms of the statute or the statute's legislative history does Congress indicate an intent that the government agency is "required" to authorize one method of shipment over the other method based on costs; Congress used only permissible language allowing that a particular method of shipment "may be" or "could be" used. In other words, this court finds no indication in the legislative history that in allowing the government greater flexibility in determining, prospectively, which method of shipment to use, Congress intended that the agencies are either—(i) required to use *the least expensive means* of shipping an employee's HHG, or (ii) required to *pay the least expensive cost* of shipping an employee's HHG, from either a prospective or retroactive standpoint. Indeed, rather than emphasizing the government's potential cost savings in relocating government civilian employees, Congress' considerations while implementing and amending the Administrative Expenses Act largely focused on the government's concern for the financial burden imposed on federal employees relocated at the government's request.

Propelling the legislative machine that created 5 U.S.C. § 5724(c) was Congress' concern that government civilian employees who relocate duty stations at the government's convenience be adequately compensated for their moving expenses. During Congress' consideration of the 1966 amendment to the Administrative Expenses Act, over and over again, Congress, the Department of Defense, and other departments of government expressed their similar and urgent concern over the financial losses suffered by relocated government employees. For example, Congress reported that "[t]he bill seeks to save [transferred] employees from some of the financial losses that are frequently inevitable when [duty station] moves are required. * * * * The committee believes this to be simple equity as employees of the Government should not be required to dip into their own pockets to pay costs incurred by them at the will of and for the benefit of the Government." H.R.Rep. No. 1199 at 2–3.

In passing the Amendment, moreover, Congress relied on a report issued by the United States Civil Service Commission, which was based on a study of relocation costs incurred by federal employees. *Id.* at 3. The Commission's report, summarized by Congress, concluded:

> All in all it is clear that present reimbursements for moving costs fall substantially short of covering necessary and reasonable expenses related to moves for the convenience of the Government.

*Id.* Urging enactment of the bill, the Commission explained that—

> Such action is needed if we are to facilitate administrative action lessening the economic hardships employees must face when forced to move at the convenience of the Government.... Agencies now hesitate to require employees to move because of the financial losses they sustain. It is not only a question of fairness to employees, it is a matter of prudent administration to protect the Government's investment in its skilled manpower by paying the legitimate costs of transfers.

S.Rep. No. 1357 at 3 U.S.Code Cong. & Admin.News 1966, 2564, 2566. Similarly, the Comptroller General "agree[d] with the prin-

ciple that employees should be adequately reimbursed for the expenses incurred incident to transfers of official stations for the convenience of the Government." S.Rep. No. 1357 at 14 U.S.Code Cong. & Admin.News 1966 pp. 2564, 2575. The Comptroller General added: "We believe enactment of the bill will result in greater willingness of employees of our Office to accept transfers to and from field stations and will, therefore, contribute toward more effective administration of our functions." *Id.* Thus, Congress enacted "[t]his bill [amending the Act] [to] enable the Government to more nearly meet the actual expenses incurred by the transferred employee who is uprooted and moved in the interest of the Government." S.Rep. No. 1357 at 4. The result of Congress' efforts is 5 U.S.C. § 5724(c).

Based on the foregoing review of the plain terms of the statute, 5 U.S.C. § 5724(c), and its legislative history, we are convinced that Congress was motivated to enact and amend 5 U.S.C. § 5724(c) to accomplish a dual purpose. First, Congress desired to give the government agencies more flexibility to determine which method of shipment to *prospectively* authorize for an employee's shipment of HHG. Added flexibility allows an agency to escape the administrative burden of the actual expense method and, at the same time, choose a method of shipment anticipated to be the most economical to the government. Second, Congress wanted to more fully compensate government employees for their shipping expenses incurred in relocating duty stations at the request and convenience of the government. Congress believed that this latter benefit to the government employees was both a matter of fairness and a matter of good administration, since the government has a substantial interest in retaining its skilled employees.

Viewing the statute as a whole, and considering the statute's dual purpose in harmony, this court fails to find any indication by Congress that the government agencies are *required* to perform a cost comparison prior to authorizing an employee to ship HHG under one of the two available methods. Rather, Congress has provided the agencies significant flexibility in choosing which meth-

od of shipment to authorize in relocating a government civilian employee's HHG by performing an economic analysis of the estimated costs of each method of shipment. However, neither the statute's express terms nor its legislative history addresses any consequences resulting from the agency's complete failure to perform a cost comparison. Rather, the statutory terms indicate a broad congressional grant of authority to the agencies to promulgate regulations governing the determination of the economic advantage between the two shipping methods. As a result, and in light of the dual purpose of 5 U.S.C. § 5724(c), this court cannot deem the express terms of defendant's policy enunciated in 2 JTR ¶ C8001–4c(3) as unreasonable or arbitrary.

Notwithstanding the fact that defendant's regulations are reasonable on their face, defendant's construction of its regulations in this court is not supported by the statute's express language or underlying congressional intent. That is to say, this court cannot find any support for defendant's statutory interpretation that requires, as a condition precedent, the agency's performance of an economic analysis, *i.e.*, cost comparison, before reimbursing plaintiff's HHG shipping costs under the facts and circumstances presented. Again, as discussed *supra*, a substantial concern of Congress in amending the Administrative Expenses Act of 1946 was to adequately compensate government civilian employees for their expenses incurred in relocating at the government's request.

In implementing and amending 5 U.S.C. § 5724(c), Congress sought to protect relocated government civilian employees from "dipping into their own pockets to pay costs incurred by them at the will of and for the benefit of the government." H.R.Rep. No. 1199 at 2–3. Congress *did not* legislate that the government agencies are entitled to the lowest cost of relocating each individual employee. Nor has this court found any indication that Congress intended to guarantee the agencies the best bargain in relocating employees' HHG by permitting retroactive modification of authorized travel orders to the financial detriment of the government employee. Regardless of whether Congress im-

plicitly delegated the foregoing concerns to the agencies' promulgation of travel regulations, the statutory scheme as disclosed by the legislative history does not even hint at the possibility that the agency should perform any form of audit of the shipping costs incurred. Thus, this court concludes that defendant's argument that it may retroactively procure the least cost of shipping an employee's HHG, after the fact, and under these circumstances, is decidedly against Congress' intent in implementing 5 U.S.C. § 5724(c). Indeed, this court notes that imposing such a financial detriment on government civilian employees specifically contravenes Congress' intent to more adequately compensate employees for their HHG shipping expenses incurred in relocating *in the government's interest.*

Conversely, defendant seeks a legal rule which would systematically allow the government agencies to authorize and issue travel orders only to then, subsequently, reverse the travel orders *after* the employee has performed its shipment as initially authorized, which are, by nature, irreversible. This rule prevents employees from reasonably relying on the government-issued travel orders and promptly performing the shipment of HHG with the assurance that the employee's moving expenses will be adequately reimbursed as legally authorized under 5 U.S.C. § 5724. Absent such assurance, and given the potential for retroactive alteration of the terms of the orders to the detriment of the employee, such orders are permeated with doubt and uncertainty. Moreover, adopting defendant's interpretation of 2 JTR ¶ C8001–4c(3), as proffered to this court, would impermissibly collide with the reasonable expectations of the relocated government employees regarding their record keeping responsibilities, which exist under the actual expense method and not under the commuted rate system. *See e.g., Alaska Airlines and American Airlines v. Johnson,* 8 F.3d 791, 796 (Fed.Cir.1993).

Finally, this court notes that the efficient relocation of government civilian employees is unquestionably a matter of public interest. That is to say, it is self-evident that the public has a substantial interest in the gov-

ernment's retention of skilled employees, especially those employees trained at government expense. Defendant's legal rule urged here, however, would stymie the pursuit of this public interest by making government employees more reluctant to accept change of duty station orders, given the potential for significant financial loss and uncertainty. Thus, defendant's construction of its regulation at issue directly frustrates this intent underlying 5 U.S.C. § 5724(c), and this court rejects it.

▆ Assuming arguendo that the statute's terms or legislative history supported defendant's construction of its regulatory policy, interpreting its policy as a condition precedent to an employee's reimbursement for HHG shipping expenses, our harmless error analysis of the undisputed facts and circumstances presented here results in a finding that the agency's failure to comply with its own regulations in this case substantially prejudiced plaintiff. In other words, even if Congress did not intend that the agencies lose their authority to perform the subject economic review, once the agency has issued orders authorizing an employee to ship HHG under a particular method, and once the employee has completed the shipment, this court holds that, pursuant to its harmless error analysis, the agency is unable to exercise such power in this case.

Here, the Department of the Army relaxed its regulatory policy by failing to follow the procedure of performing a cost comparison required by its own travel regulations, specifically ¶ C8001-4c(3), *before* issuing plaintiff his travel orders and, instead, performed the cost comparison *after* plaintiff completed performance (as instructed by his orders) and retroactively modified plaintiff's orders as a result. Defendant's failure to perform the cost comparison described in 2 JTR ¶ C8001-4c(3) prior to authorizing plaintiff's HHG shipment under the commuted rate system was not harmless error, because defendant's subsequent delay in performing the cost comparison and retroactive modification of plaintiff's orders substantially prejudices plaintiff. Since the prejudice suffered by plaintiff is the form of prejudice Congress intended to eradicate through enactment and amendment

of 5 U.S.C. § 5724(c), defendant's actions, accordingly, must be viewed as contrary to the statute.

Here, the parties do not dispute that plaintiff fully performed his duties relative to shipping his HHG from Washington to Kentucky as requested by the government. In particular, three government officials, apparently acting within their scope of authority, signed plaintiff's travel orders explicitly directing him to ship his HHG under the commuted rate system. It is reasonable to expect that an employee such as plaintiff, who receives government-issued travel orders (affixed with three approving signatures of agency officials), will rely substantially and promptly on the orders. Indeed, as part of his job assignment with the government, plaintiff is expected to relocate when requested by the government. *See* Compl. at Exh. 8, Plaintiff's Employment Agreement, ¶ 3(a), and Plaintiff's Mobility Agreement, ¶¶ 2, 3e. For example, paragraph 3e of plaintiff's Mobility Agreement, executed in 1984 between plaintiff and the Chief of the Recruitment and Placement Branch of the Civilian Personnel Office, states, in part:

> e. Failure of the undersigned applicant to accept directed temporary or permanent changes in duty station may result in his separation in accordance with FPM 752-1-4, or may adversely affect his career development opportunities....

Compl. at Exh. 8, p. 3. Thus, heeding this admonishment upon receiving his orders to relocate under the commuted rate system, plaintiff did so accordingly, and promptly.

In sum, defendant authorized plaintiff's HHG shipment through written, signed travel orders; plaintiff shipped his HHG accordingly; defendant then performed a cost comparison; and defendant retroactively modified plaintiff's travel orders to authorize the second, alternative method of shipment. Thereafter, defendant then denied plaintiff's reimbursement of his shipping expenses because plaintiff failed to comply with the terms of the alternative method of shipment retroactively ordered by defendant, *i.e.*, the actual expense method. Therefore, based on the foregoing undisputed fact scenario, plaintiff fully performed his shipment of

HHG, as authorized, before defendant required plaintiff to ship his HHG under a different method of shipment. Defendant ordered the retroactive change in shipping methods notwithstanding the fact that plaintiff could not possibly reverse the shipment, and nor could defendant. Yet defendant has already accrued substantial benefits from plaintiff's efforts expended by shipping his HHG pursuant to the commuted rate system, because the government need not expend administrative efforts in arranging plaintiff's shipment under the actual expense method. Nonetheless, defendant now wants to pay less for receiving more. Such a process substantially prejudices plaintiff and is decidedly against Congress' intent in implementing and amending 5 U.S.C. § 5724(c).

As a result of the foregoing, we are constrained to hold that the undisputed facts show that the plaintiff, as a member of the class of civilian government employees that Congress clearly intended to benefit through the enactment of 5 U.S.C. § 5724, is substantially prejudiced by defendant's belated performance of the cost comparison referred to by 2 JTR ¶ C8001–4c(3), and retroactive modification of plaintiff's orders. The regulatory cost comparison is a procedure established for defendant's agents, not for plaintiff. Indeed, plaintiff's orders do not indicate or otherwise put the employee on notice as to whether or not the government agency actually performed the regulatory cost comparison before issuing the orders. Therefore, it cannot be said that plaintiff failed to do something required by statute or regulation. Moreover, plaintiff did not do anything that was prevented by statute or regulation. Rather, it is defendant's omission in failing to perform the cost comparison prior to authorizing plaintiff's shipment under the commuted rate system for which, in effect, defendant seeks to punish plaintiff. This proposition, adamantly advocated by defendant as the necessary result in this case, insults this court's sense of equity and justice. Moreover, it is not required by the statute or regulation at bar and is not suggested by the statute's legislative history. Thus, this court rejects it.

Accordingly, we hold that, through 5 U.S.C. § 5724(c), Congress merely permitted the government a means of prospectively securing a better price for its employee relocations through the availability of alternative options for shipping HHG. Indeed, even the regulation's terms at issue here are prospective in nature, and not retroactive; the terms of defendant's regulations simply guide the agency in anticipating the most economical means of shipping an employee's HHG. *See* 2 JTR ¶ C8001–4c(3) ("A cost comparison will be made...."; "In the event that [one method exceeds another by more than $100], the more economical method will be used."; "An employee's request ... will be the determining factor in cases where...."). Contrary to defendant's assertions in this court, we view defendant's policy embodied in 2 JTR ¶ C8001–4c(3) as an aid to the agency's exercise of discretion under 5 U.S.C. § 5724(c) in determining which method of shipping HHG is more economical and, therefore, preferable; defendant's policy does not serve as an inflexible condition precedent to plaintiff's reimbursement of shipping costs. *See American Farm Lines*, 397 U.S. at 539, 90 S.Ct. at 1292.

Defendant contends that the decision at bar is controlled by our predecessor's decision in *Barry R. Scharaga*, 209 Ct.Cl. 728, 1976 WL 7969 (1976). In *Scharaga*, an employee of the Federal Aviation Administration (FAA) sought reimbursement of travel expenses from the Federal Government. *Id.* at 729. Prior to traveling overseas to Germany, Mr. Scharaga received an authorized travel advance payment of $3,079.88 from defendant to cover temporary lodging, subsistence, etc. *Id.* The FAA later determined that Mr. Scharaga was not entitled to the advance payment under applicable statutes and regulations, and, thereafter, the government recovered the payment through payroll deductions during the course of five years. *Id.* Mr. Scharaga subsequently filed a claim for reimbursement of the monies in the United States Court of Claims.

Resolving Mr. Scharaga's claim on summary judgment, the Court of Claims determined that the Foreign Service Regulations applicable to plaintiff's relocation to a foreign

duty station in Germany precluded plaintiff's entitlement to the claimed expenses. *Id.* at 730–31. As a result, the court held, "[a]ny promises by defendant's agents contrary to these statutes and regulations did not bind defendant to pay the expenses as they were beyond the scope of the agents' authority." *Id.* at 731. Under these circumstances, therefore, the government "is not estopped to deny the authority of its agents." *Id.* at 732–33.

Here, however, the facts are clearly distinguishable from *Scharaga*. There, the court posed plaintiff's argument as implying that "notwithstanding statutes or regulations to the contrary, having led plaintiff to incur the expenses by its promises to pay, defendant should now be estopped to assert that the promises were invalid." *Id.* at 731. Therefore, Mr. Scharaga was seeking recovery of travel expenses contrary to existing statutes and regulations. As discussed above, however, the subject statute and regulation in this case do not preclude Mr. Wirth's recovery of his claimed shipping expenses. Thus, in this case, as explained above, plaintiff's recovery of costs for shipping his HHG as computed under the commuted rate system is not contrary to statutory or regulatory law.

■ Accordingly, plaintiff is entitled to his shipping costs as computed under the commuted rate system in the amount of $16,-676.74. In addition, plaintiff shall recover costs he requested in the amount of $120.00, representing his filing fee. *See* 28 U.S.C. § 2412 (1966), as amended by the Equal Access to Justice Act, Pub.L. No. 96–481, 94 Stat. 2327 (1980); 28 U.S.C. § 1920 (describing costs a court may award, nonexclusively).[7]

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby DENIED, and plaintiff's cross-motion for summary judgment is hereby GRANTED. The

Clerk shall enter judgment for plaintiff in the amounts delineated above.

IT IS SO ORDERED.

---

7. Plaintiff has not submitted an application for attorney fees to this court as described under 28 U.S.C. § 2412. Therefore, this court does not pass on plaintiff's request for attorney fees posed in his complaint. This court notes, however, that *pro se* litigants are generally not entitled to attorney fees. *See Naekel v. Department of Transportation*, 845 F.2d 976, 981 (Fed.Cir.1988).