PLEASANT COUNTRY, LTD., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–670L.

United States Court of Federal Claims.

Feb. 24, 1997.

Dale S. Zeitlin, Phoenix, AZ, for plaintiff.

Daniel G. Steele and Stuart B. Schoenburg, Washington, DC, with whom was Lois J. Schiffer, for defendant. Richard Greenfield, Department of the Interior, Phoenix, AZ, of counsel.

### ORDER

MILLER, Judge.

This case is before the court after argument on defendant's motion for summary judgment. The issue for decision is whether plaintiff brought suit before exhausting available administrative remedies.

### FACTS

The following facts are undisputed, unless otherwise noted. Pleasant Country Limited Partnership ("plaintiff") is an Arizona limited partnership that owns approximately 4,058 acres of land in Yavapai County, Arizona. Plaintiff alleges that the construction of a dam in Yavapai County flooded the Yavapai County Road, thereby destroying plaintiff's access to its lands.

In 1985, as one component of the Central Arizona Project (the "CAP"), the United States Department of the Interior, Bureau of Reclamation (the "BOR"), began construction of the New Wadell Dam on the Agua Fria River approximately 35 miles northwest of Phoenix, Arizona. The storage of Colorado River water for CAP use is the chief function of the New Wadell Dam. The New Wadell Dam also stores Agua Fria River runoff, providing incidental flood protection to the surrounding area.

The New Wadell Dam was built approximately one-half mile downstream from the Historic Wadell Dam. The Historic Wadell Dam stored Agua Fria River water in the Lake Pleasant reservoir to be used for irrigation purposes by the Maricopa Water District. In order to construct the New Wadell Dam, the BOR found it necessary to breach the Historic Wadell Dam so as to provide a channel between the two dams that would allow the water level to remain the same on both sides of the previously existing dam. The BOR recognized that, by breaching the Historic Wadell Dam, Lake Pleasant would increase in size by 7,000 surface acres and would flood much of the surrounding area.

The actual breaching of the Historic Wadell Dam took place on December 4 and 16, 1992. As a result of the breaching, plaintiff alleges that the BOR caused the Yavapai County Road, also known as the East–West Trial or Table Mesa Road, to flood and become submerged, allegedly destroying plaintiff's access to its lands and thereby constituting a taking. See U.S. Const. amend V. Plaintiff describes these seven parcels, as follows:

Section 23, Township 8 North, Range 1 East, consisting of approximately 640 acres of land;

Section 2, Township 7 North, Range 1 East, consisting of approximately 640 acres;

Township 8 North, Range 1 East Gila and Salt River Base and Meridian Section 8, SE ¼, Section 9, S ½, Section 10, Lot 5, W ½ SW ¼, SE ¼ SE ¼, containing approximately 631.62 acres;

Township 8 North, Range 1 East Gila and Salt River Base and Meridian. The following patented mining claims:

Beacon light, M.S. 1396

Graphic, M.S. 1426

Foy No. 1, M.S. 4294

5 ½ of Rinon, M.S. 4265

containing 72.01 acres;

Township 9 North, Range 1 East Gila and Salt River Base and Meridian Section 18: Lots 1, 2 E½ NW½ NE½, NE¼, containing 314.14 acres;

Township 9 North, Range 1 East Gila and Salt River Base and Meridian Section 20, E½, Section 21: NW¼ NE¼, NW¼, N½ SW ¼, SW¼ SW¼ containing 640 acres; Township 10 North, Range 1 East Gila and Salt River Base and Meridian Section 35, Section 3: E¼, SW ¼, containing 1,120 acres.[1]

Complaint filed Oct. 10, 1995, ¶ 1 ("Parcels 1–7").

In preparation for the breaching of the Historic Wadell Dam, the BOR began the process of acquiring the surrounding lands necessary to accommodate the New Wadell Dam and the expanded Lake Pleasant. The expansion would dramatically increase the size of the Lake Pleasant Regional Park (the "LPRP").

The BOR acquired a portion of these necessary lands through the November 16, 1987 Deed of Relinquishment from the State of Arizona to the United States. Other lands were acquired through two major condemnation proceedings pursuant to 40 U.S.C. § 258(a) (1988). The first proceeding was *United States v. 7406.37 Acres of Land More or Less*, Civ. No. 89–1605 PHX–RGS (D.Ariz. Aug. 18, 1992) (acquiring state lands). In the second major proceeding, the BOR sought to obtain certain lands inside the LPRP that had been acquired by plaintiff in 1979.[2] *See United States v. 1239.82 Acres of Land*, Civ. No. 89–1596–PHX–RCB (D.Ariz. Nov. 14,

1994). That claim has been resolved with the exception of five acres that remain at issue. *See United States v. 5.0 Acres of Land, More or Less*, Civ. No. 94–1193–PCT–EHC (D.Ariz. filed June 13, 1994).[3]

With respect to Parcels 1, 3, 4, 5, and 6, apparently little is disputed. For Parcels 1, 3, and 4, east-west trails other than the now submerged Yavapai County Road in the vicinity of Cotton Wood Gulch continue to provide plaintiff access. These access routes are not direct, but consist of rough trails that the expanded Lake Pleasant has not affected. Parcels 5, 6, and 7, however, have apparently never had any access routes. Consequently, defendant asserts that the expansion of the Lake Pleasant reservoir has not impacted these parcels. Plaintiff does not address these access issues in its opposition brief or in its statement of genuine issues.

The parties proffer conflicting evidence concerning Parcel 2. Defendant relies primarily on the Declaration of Stanley F. Seigal, dated April 24, 1996, Chief, Land Resources Management Division, Phoenix Area Office, BOR, and various maps. Mr. Seigal asserts that because it lacked the necessary easements, plaintiff never possessed a right of continuous legal access to Parcel 2 via the Yavapai County Road. Mr. Seigal also asserts that the Yavapai County Road never connected with or provided direct access to Parcel 2. In fact, defendant points out that

---

1. The parties dispute whether this is the correct description of Parcel 7. Defendant contends that the correct location is Township 9 North, rather than Township 10 North.

2. In 1979 plaintiff acquired 25 non-contiguous parcels, totaling approximately 10,000 acres, located in Maricopa and Yavapai Counties.

3. In its suit concerning the five acres, plaintiff seeks compensation for the same 640 acres of Parcel 2 that are at issue in this case. Plaintiff's arguments in *Five Acres of Land* are similar to the arguments plaintiff offers in its opposition brief in this case. First, the five-acre parcel has been submerged by the expanded Lake Pleasant. Second, the Yavapai County Road passed through the five-acre parcel. Moreover, the five-acre parcel has a private right-of-way easement that would provide Parcel 2 with access to the Agua Fria River. Thus, plaintiff contends that the two parcels and one easement actually constitute one parcel that has been used for the past

50 years for cattle ranching. As a consequence of the five acres being submerged—and the Yavapai County Road along with them—plaintiff claims that the BOR has destroyed both the public and private access to Parcel 2, thereby landlocking the parcel and rendering it valueless. Because Parcel 2 and the five acres are not contiguous, the Government asserted in *Five Acres of Land* that plaintiff was not entitled to severance damages for Parcel 2. The district court has yet to rule on this question. Plaintiff admits that it has filed the instant lawsuit as an alternative means of seeking compensation for Parcel 2. Plf's Br. filed June 14, 1996, at 2.

At oral argument, however, plaintiff withdrew its claims concerning the easement granting Parcel 2 access to the Agua Fria River. Transcript of Proceedings, *Pleasant Country, Ltd. v. United States*, No. 95–670L, at 47–48 (Fed.Cl. Jan. 23, 1997) (hereinafter "Tr."). Accordingly, the court only need address plaintiff's taking claim with respect to Parcel 2 and its access to the Yavapai County Road.

the road is no closer than one-fifth mile to Parcel 2. According to Mr. Seigal, no direct access to Parcel 2 existed until approximately July 1990, when a north-south road connecting the Yavapai County Road to Parcel 2 was constructed in trespass over publicly-owned lands.

Plaintiff relies on the Declaration of John A. Murphy, Jr., dated May 24, 1996, a partner in Pleasant Country, Ltd. Mr. Murphy states that for the previous 17 years plaintiff continuously has used the Yavapai County Road to access Parcel 2.[4] According to plaintiff, the Yavapai County Road, which runs from the Table Mesa Interchange on Interstate 17 to other county roads and ultimately connects to State Highway 74, provides the only means of access to Parcel 2. Plaintiff also notes that the Yavapai County Road is a legal county road, duly recorded in Yavapai County, available for use by the public. Plaintiff does not dispute, however, that Yavapai County Road does not "touch Parcel 2, and that Pleasant Country constructed a road from the Yavapai County Road to Parcel 2, which provided access to the property through federal land." Plf's Br. filed June 14, 1996, at 8–9.

While admitting that the Yavapai County Road does not connect directly to Parcel 2, Mr. Murphy asserts that at the point the road passes through publicly-owned land, just to the south of Parcel 2, a north-south road exists (referred to as the "bladed road"), which connects Parcel 2 to the Yavapai County Road. According to Mr. Murphy, this road—used to transport well-drilling and other heavy equipment, as well as by passenger cars—was in existence at the time plaintiff acquired title to Parcel 2. Plaintiff also asserts, however, that it constructed this bladed road through federal property for a short distance to Parcel 2. Plf's Statement of Genuine Issues filed June 14, 1996, at ¶ 7. Furthermore, plaintiff contends that federal officials have acknowledged previously that plaintiff has a legal right of access from

Yavapai County Road to Parcel 2. Plaintiff argues that its use of this road has neither harmed nor disturbed any public lands, resources, or improvements. On this basis plaintiff concludes that because the BOR cannot deny access to Parcel 2, a trespass was not committed.

The parties also dispute the effect of the 1987 Deed of Reclamation from the State of Arizona to the United States. The BOR asserts that its acquisition of legal title to formerly state-owned lands through which the Yavapai County Road passed preempted any access rights to which plaintiff may have been entitled. Plaintiff rejoins that access via the Yavapai County Road was not destroyed until the breaching of the Old Wadell Dam, rather than at the time the BOR acquired the previously state-owned lands. According to plaintiff, until the breaching of the Historic Wadell Dam in December 1992, plaintiff continued to use the Yavapai County Road to access its possessions.

The final area of dispute surrounds the fact that several of plaintiff's parcels are bounded by public lands administered by the Department of the Interior, Bureau of Land Management, Phoenix Resource Area (the "BLM"), or, for Parcel 7, by Prescott National Forest. Management of public lands is governed by the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–1782 (1994) (the "FLPMA"). According to the Declaration of MarLynn Spears, April 23, 1996, Supervisory Lands and Minerals Specialist, BLM, the regulations to the FLPMA, see 43 C.F.R. Part 2800 (1996), authorize the granting of rights-of-way across public lands. Ms. Spears stated that plaintiff has failed to apply to the BLM for a right-of-way permit that would entitle it to access its various properties across public lands. Therefore, defendant argues that plaintiff's claim for a taking is not ripe for decision.

Plaintiff counters that it is unclear whether 43 C.F.R. Part 2800 applies to this case

---

4. The only interruption of plaintiff's use of the Yavapai County Road to access Parcel 2 occurred several years ago when a flood washed out a portion of the road adjacent to the Boulder Creek Ranch, which elected not to repair the road. Instead, Boulder Creek Ranch utilized another road that by-passes the damaged section of the Yavapai County Road. Both Boulder Creek Ranch and plaintiff use the by-pass road and jointly maintain the locks on the gates which provide admittance to the access road.

because the lands surrounding Parcel 2 may be administered by the BOR, not the BLM. If this is the case, the BOR does not provide a means of applying for a right-of-way. Plaintiff also asserts that, because it merely engaged in the "casual use" of public lands, a right-of-way or temporary use permit is not required.

Plaintiff filed suit seeking damages in excess of $5 million for the alleged taking of its seven parcels. Defendant moved for summary judgment. The issues include whether 1) plaintiff has a compensable property interest, which depends on whether plaintiff possessed a legal right of access to its various parcels via the Yavapai County Road;[5] 2) plaintiff's claim is barred by the statute of limitations; 3) plaintiff failed to exhaust its administrative remedies; and 4) with respect to Parcel 2, plaintiff is engaging in litigation in violation of 28 U.S.C. § 1500.[6]

## DISCUSSION

### 1. *Summary judgment standards*

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56. Summary judgment is not appropriate if there are disputes over material facts that might significantly affect the outcome of a suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Defendant, as the movant, has the burden of establishing that there are no genuine material facts in dispute and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To defeat a motion for summary judgment, plaintiff "must point to

an evidentiary conflict created on the record at least by a counter statement of fact or facts set forth in detail in an affidavit by a knowledgeable affiant." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984).

In resolving defendant's motion, the court cannot weigh the evidence and determine the truth of the matter on summary judgment. *Anderson,* 477 U.S. at 249, 255, 106 S.Ct. at 2510–11, 2513–14. Each party has presented arguments and affidavits in support of its contentions. In the context of a summary judgment motion, this court cannot prefer defendant's facts to plaintiff's. On the contrary, a party opposing summary judgment is entitled to "all applicable presumptions, inferences, and intendments." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984); *see Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Defendant attacks plaintiff's case by pointing out an absence of evidence to support it. This is a legitimate ground for granting summary judgment. *See D.J. Mfg. Corp. v. United States,* 86 F.3d 1130, 1135 (Fed.Cir.1996) (citing cases). However, error is committed by weighing evidence to arrive at the conclusion that plaintiff's theory is bereft of evidentiary support. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. This is a constitutional taking case, and, due to the *ad hoc* nature of constitutional taking claims, such disputes often revolve around factual issues that can be determined only after trial or upon examination of a fairly complete record. *Whitney Benefits, Inc. v. United States,* 752 F.2d 1554, 1558 (Fed.Cir.1985); *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 891 (Fed.Cir. 1983).

Rule 56(d)(3), however, instructs the court, that

---

5. Defendant takes a different position in the instant case than it did in the pending proceedings before the Arizona district court. In that action defendant stipulated that plaintiff had legal access to its property. In this case defendant denies plaintiff's right of access. Such inconsistent behavior only results in "wasteful and esoteric litigation" that delays case development. *See Sadelmi Joint Venture v. Dalton,* 5 F.3d 510, 514 (Fed.Cir.1993).

Defendant made new arguments and attached additional exhibits to its reply brief concerning

whether the Yavapai County Road is a county road of record. Plaintiff did not have an opportunity to respond to these additional arguments and exhibits. The court decided against protracting the briefing period and therefore does not consider them in rendering its decision.

6. Both parties stated that they were not ready to press the 28 U.S.C. § 1500 issue at this time. Tr. at 34–36; Def's Br. filed Nov. 22, 1996, at n. 1; Plf's Br. filed June 14, 1996, at 2–3.

[i]n determining any motion for summary judgment, the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are included in the Statement of Genuine Issues and are controverted by affidavit of other written or oral evidence.

See *Bayou Land & Marine Contractors, Inc. v. United States*, 23 Cl.Ct. 764, 770 (1991). The non-movant "may not rest upon mere allegations or denials ... such party's response, by affidavit or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial." RCFC 56(f); *see Barmag*, 731 F.2d at 835–36.

### 2. *Whether plaintiff possessed a right of access to its property prior to the flooding of the Yavapai County Road*

Plaintiff has failed to carry its burden with respect to Parcels 1, 3, 4, 5, 6, and 7. Defendant asserted in its proposed findings of fact that "[o]ther east-west trails in the vicinity of Cotton Wood Gulch connect to plaintiff's parcels 1, 3, and 4" and that "Parcels 5 and 6 have no apparent access at all." With respect to Parcel 7, defendant contends that the parcels do not have any connection to the Yavapai County Road or the north-south trails. Plaintiff failed to respond to these assertions with respect to any parcel other than Parcel 2. Furthermore, plaintiff conceded this fact at oral argument, maintaining that Parcels 3–7 were no longer in contention. Transcript of Proceedings, *Pleasant Country, Ltd. v. United States*, No. 95–670L, at 8–9 (Fed.Cl. Jan. 23, 1997) (hereinafter "Tr."). Because plaintiff failed to submit any evidence to counter defendant's factual assertions with respect to any parcel other than Parcel 2, plaintiff has abandoned its claims as to these parcels, and defendant is entitled to summary judgment with respect to them. *C & G Excavating Inc. v. United States*, 32 Fed.Cl. 231, 237 n. 4 (1994) (citing cases) (holding that failure to respond to ground in briefing on cross-motions for summary judgment deems argument abandoned); *see* RCFC 56(d)(3); *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149 (Fed.Cir.1986) ("The party shall state the precise nature of its disagreement and give its versions of the events, supported by record citations.").

■ A factual dispute concerning the status of the Yavapai County Road and the access it provides Parcel 2 is present. Relying on the declarations of Mr. Seigal and Ms. Spears, defendant argues that plaintiff did not have a right of access to its lands via the now-flooded Yavapai County Road. Plaintiff contends that it had a valid right of access because the Yavapai County Road is a "legally established road," Plf's Br. filed June 14, 1996, at 8, which provided access to Parcel 2 through federal land; that this access is required by federal law; and that the access does not cause any appreciable disturbance to the public lands.

Plaintiff has introduced sufficient evidence conforming to RCFC 56(d)(3) to create a genuine issue of material fact as to whether the Yavapai County Road is a dedicated public road. If the road is a dedicated road, plaintiff has a right of access. The right to use the now-flooded roadway does not get plaintiff to Parcel 2, however. Defendant presented evidence that the Yavapai County Road did not connect to plaintiff's Parcel 2. Plaintiff so conceded in its opposition brief and at oral argument.

### 3. *Whether plaintiff must apply to the BLM for access*

Argument established that federal lands surround Parcel 2. It also was established that neither party contested whether plaintiff was entitled to access across the federal lands. *See* Def's Br. filed Nov. 22, 1996, at 11–12; Plf's Br. filed June 14, 1996, at 9–10; Tr. at 30, 52. Specifically, the parties agreed that the lands in question are subject to the FLPMA. As such,

[n]otwithstanding any other provisions of law, and subject to such terms and conditions as the Secretary of the Interior may prescribe, the Secretary shall provide such access to nonfederally owned land surrounded by public lands managed by the Secretary under the Federal Land Policy and Management Act of 1976 (43 U.S.C. §§ 1701–82) as the Secretary deems ade-

quate to secure to the owner the reasonable use and enjoyment thereof: Provided, That such owner shall comply with rules and regulations applicable to access across public lands.

16 U.S.C. § 3210 (emphasis added). This provision is applicable to all lands administered under the FLPMA. *See Adams v. United States* 3 F.3d 1254 (9th Cir.1993); *Mountain States Legal Foundation v. Espy,* 833 F.Supp. 808 (D.Idaho 1993); *Montana Wilderness Ass'n v. United States,* 496 F.Supp. 880, 887–89 (D.Mont.1980), *aff'd in part, remanded on other grounds,* 655 F.2d 951 (9th Cir.1981); *Utah Wilderness Ass'n,* 80 IBLA 64 (1984). Plaintiff is entitled to an access route provided that it complies with the requisite application procedures, *i.e.,* plaintiff must apply to the BLM for an access route. Contrary to plaintiff's assertion, it is not the Government's burden to proceed with the application and secure plaintiff an access route; rather, the statute places the burden solely on plaintiff. *See* Tr. at 78–82.

Plaintiff in the instant case did not make this application. As plaintiff conceded at oral argument, the BLM has the right to regulate its access through the federal lands. This is why the application procedure exists; without this application, the court cannot determine the extent of the alleged taking. The location and scope of plaintiff's access is for the BLM to determine in the first instance. It is not for the court to decide the location of plaintiff's access route through the federally-owned lands.

■ Plaintiff attempts to circumvent this requirement by arguing that 1) such an application would be fruitless, as the Yavapai County Road is submerged currently, and 2) it does not need to apply for a permit, as its use of the federal land only amounts to a "casual use" for which permits are not required. First, plaintiff's argument that "there is simply nothing to apply for as the [Yavapai County Road] ... has been submerged under water" is flawed fundamentally. Argument revealed that the BLM owns land both to the east and west of Parcel 2

and, as such, it would be possible to grant plaintiff meaningful access to Parcel 2. Although Yavapai County Road may be submerged,[7] plaintiff did not demonstrate that the land surrounding plaintiff's parcel is submerged. It is thus possible that plaintiff may be granted meaningful access through the non-submerged land. Furthermore, plaintiff considerably retreated from its position at argument, contending instead that the BOR destroyed its access route. *See* Tr. at 80–82. The court understands plaintiff's frustration, as it previously had access, it currently does not, and this lack of access came as a result of an action by the BOR, not plaintiff. Nevertheless, the statute is clear: Plaintiff bears the burden of applying to the BLM for access. As the parties agreed at oral argument, if plaintiff is denied access or is granted meaningless or cumbersome access, plaintiff may bring suit in the Court of Federal Claims for a taking.

■ Whether plaintiff's use constitutes "casual use" is a complex and technical question. *See* 43 C.F.R. § 2800.0–5. Plaintiff's conclusory assertion of "casual use" does not render a triable issue of material fact. *See Barmag,* 731 F.2d at 835–36 (finding that conclusory allegations are insufficient to create triable issues of fact); *Curtis v. United States,* 144 Ct.Cl. 194, 168 F.Supp. 213, 216 (1958) (finding that mere filing of affidavits in opposition to summary judgment is not sufficient to defeat summary judgment motion); *see also Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53 ("A complete failure of proof concerning an essential element of the non-movant's case entitled the movant to judgment as a matter of law."). The inquiry therefore should be reserved for the BLM, and plaintiff's action is premature due to failure to exhaust the appropriate administrative remedies.

*4. Whether the complaint is barred by the statute of limitations*

■ Defendant also seeks summary judgment because plaintiff failed to comply with the statute of limitations. Defendant argues

---

7. Whether the road was submerged for three years or at any time is a matter of great controversy. For purposes of summary judgment, the

court finds that plaintiff demonstrated sufficient evidence to establish a genuine issue of material fact.

that plaintiff's cause of action based on the BOR's destruction of access by expanding Lake Pleasant accrued, at the very latest, on September 28, 1989, when the Government filed its Declaration of Taking. Because the BOR's activities were "open, notorious, and in this case, a matter of public record, the claimant is on notice as to its possible injury," and thus plaintiff "knew or reasonably should have known of the factual basis of the claim." Def's Br. filed Apr. 25, 1996, at 14. In short, once the BOR acquired the lands that plaintiff used to access its properties, defendant contends that the basis of the claim readily was made apparent.

Defendant ignores the expansive nature of takings law and the Supreme Court's rejection of such a strict analysis. Specifically, the Supreme Court has found that "[t]he Fifth Amendment expresses a principle of fairness and not a technical rule of procedure...." *United States v. Dickinson,* 331 U.S. 745, 748, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). In *Dickinson* the United States constructed a dam to improve the navigability of a river in West Virginia. The dam intermittently inundated various privately-owned properties. Plaintiffs brought suit on April 1, 1943, for the value of easements taken by permanently and intermittently flooding their land and for erosion damages. The main issue before the Supreme Court was whether plaintiffs filed their action within the six-year statute of limitations. The Government argued that the statute of limitations began to run in 1936 when the dam first impounded water or, alternatively, that the statute began to run in 1937 when the pool level first exceeded the normal river level and flooded plaintiffs' property. In rejecting a rule calling for suit "as soon as inundation threatens," *id.* at 749, 67 S.Ct. at 1384, the Court explained:

> If suit must be brought, lest [a plaintiff] jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him—for instance, the uncertainty of the damage and the risk of *res judicata* against recovering later for damage as yet uncertain. The source of the entire claim—the overflow due to rises in the level of the river—is not a single event; it is continuous. And as there is nothing

in reason, so there is nothing in legal doctrine to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized. *An owner of land flooded by the Government would not unnaturally postpone bringing suit against the Government for the flooding until the consequences of inundation have so manifested themselves that a final account may be struck.*

*Id.* (emphasis added).

The general policy discouraging a strict "application of accrual principles in unique cases involving Fifth Amendment takings by continuous physical processes," *Applegate v. United States,* 25 F.3d 1579, 1582 (Fed.Cir. 1994), and commencing suit only after "the [continuing taking] situation becomes stabilized," *Dickinson,* 331 U.S. at 749, 67 S.Ct. at 1385, has been applied repeatedly. *See Applegate,* 25 F.3d at 1582; *see also United States v. Dow,* 357 U.S. 17, 27 (1958) ("[T]he statute of limitations did not bar an action under the Tucker Act for a taking by flooding when it was uncertain at what stage in the flooding operation the land had become appropriate to public use.").

Plaintiff has established by sufficient evidence that a genuine issue of material fact surrounds its access claims; plaintiff also has established a genuine issue of material fact as to whether Yavapai County Road is a public, dedicated road. Assuming, *arguendo,* that plaintiff is correct, defendant conceded at oral argument that plaintiff would have a right to transverse the federally-owned lands on that road. Based on the foregoing assertions, destruction of plaintiff's access would not have occurred on September 28, 1989, Plf's Br. filed June 14, 1996, at 8 ("[T]here was *no* destruction of access on September 28, 1989. Parcel 2 enjoyed access from Yavapai County [R]oad until 1993."). Indeed, defendant's own documents show that only after the original Wadell Dam's breach in 1992 was plaintiff's access route blocked. *See* Def's Br. filed Apr. 25, 1996, at 3; Ex. A. Consequently, the statute of limitations did not begin to run until after the flooding began, and defendant's motion for summary

judgment based on the six-year statute of limitations must be denied.

■ Defendant maintains that summary judgment is appropriate regardless of these disputed facts because it condemned lands on which the road crossed. Defendant claims it took the land free and clear of any easement, including the alleged road. Plaintiff disagrees, arguing that defendant took the lands subject to the road. The effect of the condemnation proceedings goes to the heart of the matter and represents yet another issue of material fact precluding the award of summary judgment to defendant based on the six-year statute of limitations. Accordingly, based upon the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion for summary judgment is granted in part and denied in part. The Clerk of the Court shall enter judgment for defendant with respect to Parcels 1, 3, 4, 5, 6, and 7. The Clerk shall dismiss the complaint without prejudice with respect to Parcel 2 for failure to exhaust administrative remedies.

2. Defendant is to use its offices to expedite the processing of plaintiff's application with BLM to ensure its expeditious review.

3. Defendant shall provide plaintiff's counsel with copies of all unpublished public materials of the BLM involved in the application process.

No costs.