Allen HOWARTH, Jr., et al., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–419C.

United States Court of Federal Claims.

June 17, 1998.

Steven Z. Cohen, Bloomfield Hills, Michigan, for plaintiffs.

Hillary A. Stern, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## *Order*

WEINSTEIN, Judge.

Plaintiffs[1] have moved for partial summary judgment based on collateral estoppel.[2] They contend that an arbitrator's award of environmental differential pay ("EDP") to certain nonsupervisory, wage-grade "blue collar" employees belonging to the American Federation of Government Employees (AFGE), Local 933, at the Veterans Administration (VA) Medical Center (VAMC) in Allen Park, Michigan, collaterally estops the government from contesting the arbitrator's conclusion[3] that, under Appendix J of the

---

1. The claims of eighteen of the original twenty-seven plaintiffs, including the named plaintiff, Allen Howarth, Jr., were dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500 (due to an appeal that was pending in the United States Court of Appeals for the 6th Circuit) on June 29, 1994, the date their complaint was filed in this court. Robert Abdo was added as a plaintiff by amendment to the complaint on January 6, 1995. Various other former VAMC Allen Park employees are plaintiffs in another case pending in this court, *Brown v. United States*, No. 95–634C.

2. Plaintiffs filed both an initial and a second "renewed" motion for partial summary judgment, both based on collateral estoppel.

3. The arbitrator, William M. Ellman, issued opinions on April 7, 1987, June 18, 1988 (on remand), August 17, 1990, and June 23, 1992. The arbitrator's decision was affirmed by the Federal Labor Relations Authority (FLRA) in 1990. *Allen Park VAMC and AFGE Local 933*, 34 FLRA 1091 (1990).

Federal Personnel Manual (FPM) 532–1 (now 5 C.F.R. § 532.511 Appendix A), "any exposure" by those wage-grade employees to airborne asbestos entitles an employee to EDP.[4] Plaintiffs claim EDP for every day they worked at VAMC Allen Park during the six years before filing their complaint in this case. The facility was closed in 1996.

Defendant has moved for summary judgment on the grounds that "any exposure" is not the correct legal threshold, and because there are no genuine issues of material fact establishing plaintiffs' exposure to the reasonable permissible exposure level (PEL) established by the VA, or to any level greater than that generally existing in the ambient air. Plaintiffs' motions are denied and defendant's motion is granted, for the reasons stated below.[5]

### Facts

Plaintiffs in this case are former employees at the VAMC in Allen Park, Michigan. In 1975, the AFGE and the VA negotiated an airborne asbestos exposure limit of .1 asbestos fiber per cubic centimeter of air (.1f/cc). This EDP threshold, which was set by the VA in 1987, see Circular 00–87–49 (1987), was twice as stringent as the Occupational Safety and Health Administration's (OSHA) standard at that time.[6] See Appendix to Defendant's Motion for Summary Judgment (Def's App.) at 2–3 (Deposition of Frank Denny, Jr.).

4. The arbitrator did not determine the level of actual exposure of the employees involved in the arbitration, nor the exposure for supervisory personnel.

5. Defendant has not, for purposes of these motions, disputed plaintiffs' allegation in their complaint that each of them was "exposed to asbestos while working for the VA facility." The court notes, however, that plaintiffs have proffered no evidence that would be sufficient to support a finding that plaintiffs suffered any specific level of exposure.

6. Plaintiffs object that there was no "written" agreement with the AFGE. They have not, however, presented any authority for their implicit assumption that a written agreement is necessary to prove the existence of an agreement or to make it binding or that the absence of such an agreement somehow nullifies the agency's establishment of a particular PEL.

On July 26, 1984, AFGE Local 933 filed an arbitration proceeding on behalf of wage-grade (nonsupervisory) employees at VAMC Allen Park. The arbitrator, purportedly based on copious scientific evidence, held that "any level" of exposure warranted the payment of EDP to employees for the six-year period ending with the commencement of the arbitration proceeding (on July 26, 1984). Six of the ten plaintiffs in this case were neither named parties to, nor covered by, the express terms of the arbitration decision, as they were not nonsupervisory wage-grade employees during the relevant period.[7] Two other plaintiffs, Samuel Harris and Otis Lockhart were not wage-grade employees at the time arbitration proceedings were initiated in 1984.[8] Only two plaintiffs, Robert M. Abdo and Joseph L. Belle, who were nonsupervisory employees for some time between 1978 and 1984, and wage-grade employees represented by the union on July 26, 1984, can legitimately be called parties to the arbitration proceedings.[9]

### Applicable Law [10]

5 U.S.C. § 5343 (1979) authorizes the payment of EDP for exposure to airborne asbestos. It provides, in pertinent part:

"The Office of Personnel Management, by regulation, shall prescribe practices and procedures for establishing wage schedules and rates. . . . The regulations shall provide— . . . (4) for proper differentials . . .

7. According to undisputed personnel records, John Bryant, Oscar Haynes, Margaret Hunter, Eddie Lou Jamieson, Kathryn Robinson, and Catherine Wynn, were promoted to supervisory positions before July 26, 1978, the operative date of the arbitrator's EDP award.

8. Mr. Harris and Mr. Lockhart were both promoted to supervisory positions after July 26, 1978, both in 1983. See Def's App. 76.

9. Mr. Abdo was not promoted until May 20, 1990. Mr. Belle was a temporary employee from June 21, 1978 until his termination November 19, 1992.

10. The authorities cited were in effect during the periods relevant to this case.

for duty involving ... unusually severe hazards...." 5 U.S.C. § 5343(c).

The regulations promulgated pursuant to § 5343 were contained in the Federal Personnel Manual (FPM), Supplement 532–1, S8–7, (1984) (now found at 5 C.F.R. § 532.511 Appendix A), which provided, in pertinent part:

> **f. When environmental differential is paid.** (1) An agency shall pay the environmental differential in appendix J to a wage employee ... when an employee is performing assigned duties which expose him/her to an *unusually severe* hazard ... listed in appendix J.... (Emphasis added).

\* \* \*

> **g. Determining local situations when environmental differentials are payable.** (1) Appendix J defines categories of exposure for which the hazard[s] ... are of such an *unusual* nature as to warrant environmental differentials ... (2) Each installation or activity must evaluate its situations against the guidelines in appendix J.... (Emphasis added).

Appendix J reads, in pertinent part:

| Differential rate | Category for which payable | Effective date |
|---|---|---|
| 8% | (16.) Asbestos. Working in an area where airborne concentrations of asbestos fibers may expose employees to potential illness or injury and protective devices or safety measures have not practically eliminated the potential for such personal illness or injury. | Mar. 9, 1975 |

The statute and OPM regulations effective before 1990 were silent as to the specific level of exposure warranting EDP, leaving that determination to the employing agency. In 1986, OSHA published a revised PEL standard (from 2f/cc to .2f/cc) as an 8–hour time-weighted average. In 1987, the VA set a limit of .1f/cc. *See* Circular 00–87–4a. (1987). *See also* 29 C.F.R. § 1910.1001(c)(1) (1987) (OSHA construction work standard set at .1f/cc). These standards require objective measurements of asbestos levels over specified time periods. 58 Fed.Reg. 32,048, 32,-049. Legislation enacted in 1992 extended entitlement to Hazard Pay Differentials (HPD), for the first time, to GS employees. 5 U.S.C. § 5545, 58 Fed.Reg. 32,048–01, 1993 WL 191182 (OPM adopting OSHA's HPD standards for General Schedule (GS) "white collar" employees).

### Standard of Review

Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action". *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Rules of the United States Court of Federal Claims (RCFC) 1; Fed.R.Civ.P. 1.

Summary judgment under RCFC 56(c) is appropriate when the moving party "shows," by pointing this out to the court, that there is an absence of evidence to support the nonmoving party's case. *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988) (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). If the nonmovant fails to put in sufficient evidence, by pleadings, depositions, answers to interrogatories or admissions, to create a genuine triable issue as to any material fact, the movant is entitled to judgment as a matter of law. *Avia Group,* 853 F.2d at 1560 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence must be viewed in a light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Id.* at 1560 (citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, the nonmovant must do more than merely raise some doubts; evidence must be proffered that would be sufficient to require submission of the dispute to, and that would support a favorable finding, by a reasonable factfinder. *Id.*

### Discussion

### Plaintiffs' Motions

Plaintiffs' motions must be denied on two grounds: (1) as to all but two plaintiffs, the unavailability of offensive collateral estoppel against the government, and (2) as to all

plaintiffs, the unavailability of collateral estoppel for unmixed legal issues.

■ "Nonmutual 'offensive' collateral estoppel" (*i.e.*, the common law, judicially-created doctrine precluding reconsideration of an issue decided in another forum when only one party was involved in the prior litigation, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)), is unavailable, on policy grounds, against the government. *See United States v. Mendoza*, 464 U.S. 154, 159, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (refusing to allow nonmutual (*i.e.*, "offensive") estoppel against the government). *See also Bingaman v. Department of the Treasury*, 127 F.3d 1431 (Fed.Cir.1997) (collateral estoppel available against the government only when the parties are the same in both proceedings).[11]

As to the only two plaintiffs who were parties to the arbitration proceeding, defendant relied on *Barrentine et al. v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), in which the Supreme Court expressly refused to give preclusive effect to a grievance decision in a proceeding subject to the Fair Labor Standards Act (FLSA), holding an arbitrator's decision regarding a federal statutory entitlement was not preclusive because it evidenced the "law of the shop," not the "law of the land."

■ Plaintiffs have cited (and the court is aware of) no instance when the doctrine of nonmutual collateral estoppel has been applied against the government. Plaintiffs argue that the Federal Circuit, in *Carter v. Gibbs*, 909 F.2d 1452 (Fed.Cir.1990) (in banc), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), held that *Barrentine* was inapplicable to federal sector labor relations because the employee appellants, by accepting a position covered by a collective bargaining agreement, also chose the procedures negotiated by the union and, therefore, could not challenge those procedures in a judicial forum. However, again, all but two plaintiffs here were *not* parties to the arbitration agreement. The facts in *Carter* are therefore distinguishable. Thus, the arbitrator's decision that "any level" of asbestos exposure (however minute) is sufficient to entitle an employee to EDP is not binding on this court.

Plaintiffs' argument that all plaintiffs were parties to the arbitration proceeding, because they belonged to the same category of employees (*i.e.*, wage-grade employees and members of the bargaining unit at VAMC Allen Park), is unconvincing. As a matter of fact, eight plaintiffs were *not* named parties in the arbitration proceedings. (Some supervisory employees who had been wage-grade during the relevant period but not AFGE members at the time of the arbitration participated, but only as *amici curiae*. Their status as intervenors was denied by the arbitrator because "[t]here is nothing in the record to show that the petitioning employees participated in the arbitration proceeding as a party." Plaintiffs' Proposed Findings of Uncontroverted Fact (PFUF), Exh. 17 at 2.) Again, only two plaintiffs were bargaining unit members on July 26, 1984, when the arbitration began. Further, there is no evidence that supervisors, like plaintiffs here, were subjected to the same asbestos exposure levels as the wage-grade employees involved in the arbitration proceeding.

■ The second, and more comprehensive, basis for denying plaintiffs' motions is because collateral estoppel (mutual or not) is inapplicable to purely legal issues. *See Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *United States v. Moser*, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed.

11. Plaintiffs' contention that they themselves were involved in both proceedings ("explicitly covered") is incorrect as a matter of fact as to eight plaintiffs, according to the undisputed facts presented by defendant. Eight of the ten plaintiffs were neither named plaintiffs nor members of the AFGE, which called for the arbitration proceeding, at the time the arbitration commenced. Therefore, the case cited by plaintiff, *United States v. Stauffer Chem. Co.*, 464 U.S. 165,

104 S.Ct. 575, 78 L.Ed.2d 388 (1984) in which, as plaintiff notes, "the *same* private party was involved in both proceedings," is inapposite. It bears noting that, if plaintiffs in fact were covered by the arbitrator's decision, there would be no need to sue in federal court. Other employees (GS employees) also are not entitled to hazardous duty pay (HDP) for exposure to asbestos levels.

262 (1924). The principal issue here—whether entitlement to EDP may arise from "any exposure" to asbestos, as opposed to exposure above reasonable limits established by the agency—is legal. *See O'Neall v. United States*, 797 F.2d 1576 (Fed.Cir.1986).

In *O'Neall*, the United States Court of Appeals for the Federal Circuit decided that, as a matter of law, "any exposure" does not trigger entitlement to EDP and that a quantitative level of exposure reasonably related to potential illness is required. Plaintiffs here are arguing, in effect, (contradicting *O'Neall*) that "any exposure" qualifies as a matter of law or (distinguishing *O'Neall*) that the Federal Circuit in *O'Neall* merely resolved a factual issue, as it noted that the Air Force's choice of standard was not conclusive. The court disagrees with plaintiffs' reading of *O'Neall*. These legal propositions were clearly rejected by the Federal Circuit in *O'Neall*, which approved, as a matter of law, the Air Force's use of OSHA's .2f/cc threshold, a less stringent standard than the VA's here. Also, even mixed issues of fact and law may not be precluded by a decision in a prior proceeding. *See Yates v. United States*, 354 U.S. 298, 336, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

### Defendant's Motion

Defendant has moved for summary judgment because plaintiffs have not shown the VA standard to be unreasonable and have proffered no evidence that they personally were exposed to a level of airborne asbestos above this standard (or, for that matter, to *any* level of actual exposure constituting an "unusually severe" working condition or hazard). *See* FPM Supplement 532–1, S8–7(f) (EDP is paid when an employee's duties "expose him/her to an *unusually severe* hazard") (emphasis added). There is no evidence to support plaintiffs' proposed findings of uncontroverted fact as to the essential fact that these particular plaintiffs' exposure was at a level above the VA PEL of .1f/cc (or even that it was above the less stringent OSHA level of .2f/cc) or amounted to an unusually severe working condition or hazard.

Plaintiffs' own expert witness, Mr. Roger Wabeke, could not conclude that these plaintiffs had been exposed to levels over the statutory standard. While he recalled that three "employees" mentioned that they had on occasion used compressed airwands to blow away dust on work surfaces containing asbestos, he was unable to identify any of these individuals as plaintiffs in this case. Moreover, even if these three employees were identified as plaintiffs here, there is no evidence as to the frequency or severity of their exposure, *i.e.*, that could show that use of the airwands in fact exposed them to airborne asbestos at the levels set by the VA or OSHA, or to any level whatsoever. In fact, Mr. Wabeke conceded in his deposition that, although he had been provided with tens of thousands of pages of documentation from the VA, including air sampling test results for the relevant period of time, he discovered no air sampling data that would document any plaintiff's exposure to levels in excess of the VA PEL. Def's App. 61.

Plaintiffs' second set of proposed findings of uncontroverted facts (PFUF(2)) [12] No. 2 states that the VAMC, Allen Park was "all full of asbestos," according to the Chief Engineer and Associate Director Watkins ("the whole building had asbestos in it"). However, such personal, conclusory allegations do not, without more, constitute evidence to establish that these employees/plaintiffs actually were exposed, that the levels to which they were exposed were unusually hazardous, or that they were not protected from danger, *e.g.*, by respirators and other protective gear at the time of exposure. *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir.1987) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984)) (party opposing summary judgment must show evidentiary conflict in the record, not merely denials or conclusory statements). Also, Mr. Perman goes on to state that some of the

---

12. Plaintiffs' first PFUF, accompanying its first motion for partial summary judgment (PFUF(1)), principally sets out the history of, and the conclusory findings of the arbitrator in, the arbitration proceeding.

asbestos to which he referred "was not airborne." And Ms. Watkins in fact was discussing "ACM," or asbestos-containing material, which is not necessarily dangerous, if not disturbed ("there wasn't a need to clear [the ACM] all out"). Exh. 3, PFUF(2).

PFUF(2) No. 3 alleges that the "elevator shafts ... pushed airborne contaminants throughout [the building]," citing Chief Engineer Gill, Asbestos Supervisor Marvin Stapleton, and Chief Engineer Park. In his deposition, however, Mr. Gill conceded only that there was a "possibility" of dust getting into the elevator system and stated, "I did not do any air testing, I cannot answer this question [re VA fiber levels], I do not know." Mr. Stapleton admitted that "in theory" air contaminants could be introduced through elevator shafts, but stated that he had "never seen it before." While Mr. Stapleton recollected that he "got some air samples that were above the .2 OSHA standard," he went on to state that this was "[d]uring an abatement activity ... [a]nd once again, the employees were properly protected. They were [sic] respirators and so forth at the time." Exh. 5, PFUF(2).

Mr. Perman, asked about the elevator convection theory, conceded that "air [was pushed] throughout the hospital," but when asked about asbestos, he stated, "That's kind of hard to accept that one, because they were basically blocked off with barriers in most of the wards.... Anything that may be friable would have been not in those areas or areas that were not blocked off" [by "permanent" partitions, consisting of double doors, metal and glass] and "sealed with tape." Exh. 6, PFUF(2).

As to PFUF(2) No. 4, that "VAMC was unable to remove asbestos ... to the degree management desired ... but could not because of money, understaffing," Stapleton's deposition clarified that "the current thinking [at that time] was remove ... [and his] views were more or less aligned with the prevailing views," but that now "the thinking is ... manage it in place." Exh. 7, PFUF(2). Further, the area he was concerned about "was not a frequently accessed room ... there ... for repair and maintenance and routine inspections...." Exh. 7, PFUF(2).

Therefore, even if management's prior desires were relevant, the cited depositions do not establish that their concerns were over actual exposures experienced by these plaintiffs.

PFUF(2) No. 5, stating that "[a]ny level of exposure to asbestos is unsafe" merely reiterates the legal conclusion of the arbitrator. Moreover, it too fails to allege that these particular plaintiffs were exposed to any level of airborne asbestos and, if so, what level.

In sum, the evidence plaintiffs point to as support for their proposed findings is inadequate to establish plaintiffs' actual personal exposure to unusually severe levels of airborne asbestos, as plaintiffs must prove to prevail in this case.

The court must conclude that, as a legal matter, the PEL established by the VA is reasonable. The Federal Circuit in *O'Neall*, shortly after the period at issue here, upheld the Air Force's standard of .2f/cc. Because this is the same level established by OSHA, and the VA's standard is twice as stringent, the court cannot conclude, without more, that, as a legal matter, the VA standard was unreasonable at the time in question. *See Industrial Union Dept. v. Hodgson*, 499 F.2d 467 (D.C.Cir.1974) (court extensively analyzed the higher .2f/cc standard set by OSHA in 1974, and upheld it as reasonable). *Cf. Allyn v. United States*, 198 Ct.Cl. 725, 461 F.2d 810 (1972) (court held plaintiff not entitled to HPD because did not prove exposure to dangerously high levels carbon monoxide). Plaintiffs have proffered no evidence to support a different standard that is at any specific quantified level above the "any exposure" threshold set by the arbitrator. (Nor has evidence been presented by plaintiffs that the .2f/cc level approved in *O'Neall* is no longer "reasonable," *e.g.*, due to "later knowledge or improved safety devices." *O'Neall*, 797 F.2d at 1581.)

PFUF(1) No. 43 (the only PFUF disputed by defendant for purposes of this motion) states: "The plaintiffs experienced the same 'level of exposure' to asbestos, *i.e.*, 'any,' as the employees who have received EDP [pursuant to the arbitrator's decision]." However, plaintiffs offer no evidence to support this

proposed finding, *i.e.*, as to what level the employees under the arbitrator's decision were exposed, or whether these plaintiffs were exposed to the same level as the employees or, for that matter, that plaintiffs were exposed to *any* level at all above the ordinary outdoor ambient airborne asbestos levels to which we all ordinarily are exposed.[13]

PFUF(1) No. 3 states merely that each plaintiff "at one time" was a wage-grade employee and "eventually" was promoted to a supervisory position. This is inadequate support for a finding that plaintiffs were within the category of employees subject to the arbitration proceeding. As to whether each employee actually was exposed to excessive levels of airborne asbestos, PFUF(1) No. 15 falls short of averring actual exposure or causation, the level of exposure, or the circumstances of exposure: "The Plaintiffs are seeking EDP *because of their exposure* to asbestos at the VAMC...." (emphasis added). Similarly, PFUF(1) No. 16 suggests that plaintiffs were represented by the AFGE, but fails to specify that all, or, if not, which, of these plaintiffs (if any) were represented: "[n]on-supervisory wage grade employees at the VAMC ... were represented by [AFGE], Local 933." The remainder of the proposed findings in PFUF(1) merely recite (disputed) legal conclusions and the findings and conclusions of the arbitrator.

As the government pointed out in its opposition to plaintiffs' motion to file additional supplementary material (after full briefing of the summary judgment motion), plaintiffs' only evidence of possible airborne asbestos exposure in the facility involved other employees (the three recalled by Mr. Wabeke). Further, the only probative evidence on this point in the record indicates that VA employees, presumably including plaintiffs, always wore full and adequate protection during any incidents of possible harmful exposure, and thus that there was no actual exposure to asbestos on these occasions. See Def's App. 37–38, 41, 42–A, 48 (Deposition of Marvin Stapleton, the industrial hygienist (IH) assigned to VAMC Allen Park between 1986

and 1989) (testifying that only asbestos removal personnel were exposed to air levels in excess of .2f/cc and "they [then] were all garbed out in their protective equipment ... and the respirators;" that other employees in the hospital "weren't getting exposed;" and that it was "unlikely" exposure could have spread by the HVAC (air handling system) through the hospital, as plaintiffs argue, and "very unlikely" that it could have accessed other parts of the building. Def's App. 48–50.). Similarly, Mr. Anton Karpowich, the IH from 1990 on, reported in a July 1990 survey and testified in his deposition that "[i]t can be safely stated that asbestos exposures above the regulatory acceptable limits (OSHA and VA) are not being exceeded [at the VAMC Allen Park facility]." Def's App. 6. Plaintiffs have adduced no evidence to contradict this evidence.

Plaintiffs contend that their assertion of harmful exposure in the complaint, because undisputed in defendant's answer, must be taken as true. This is incorrect. Proposed findings of uncontroverted facts are deemed to be true only if they are adequately supported. *See* RCFC 56(d)(3) ("In determining any motion for summary judgment, the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established...."). *See generally Pleasant Country, Ltd. v. United States,* 37 Fed. Cl. 321, 326 (1997); *Wirth v. United States,* 36 Fed.Cl. 517, 519 (1996). Plaintiffs have proffered no evidence, nor any persuasive reason, to contradict the supported material facts claimed by the defendant.

Accordingly, for the reasons stated, plaintiffs' motions for partial summary judgment seeking to enforce the arbitrator's findings of fact and conclusions of law on the grounds of issue preclusion must be, and hereby are, denied. Defendant's motion for summary judgment is granted because there is no genuine dispute that the VA PEL level was reasonable and that these individual plaintiffs were not exposed, unprotected, (1) to any level of airborne asbestos that was an unusually severe working condition or hazard, (2)

---

13. Plaintiffs' experts, Drs. Michael Kelly and Jacqueline Moline, conceded that airborne asbestos is naturally found in exterior air in metropolitan areas. Def's App. B, 2–3, 5–6.

168

to any level over the PEL established by the VA, or (3) to any level over the level usually present in ambient outdoor air. The Clerk is directed to enter judgment for defendant.